IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff-Respondent,<br><br>     v.<br><br>CHRISTOPHER A. MAZZEI,     (01)<br><br>                    Defendant-Petitioner. | CR. NO. 22-00045 JMS-01<br>(CIV. NO. 26-00025 JMS-KJM)<br><br>ORDER (1) DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY, ECF NO. 123; AND (2) DENYING CERTIFICATE OF APPEALABILTY |

**ORDER (1) DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY, ECF NO. 123; AND (2) DENYING CERTIFICATE OF APPEALABILITY**

## I.  INTRODUCTION

Before the court is pro se Defendant-Petitioner Christopher A. Mazzei's ("Defendant") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion").  ECF No. 123.[1]  For the reasons discussed below, the court DENIES the § 2255 Motion and DENIES a Certificate of Appealability.

---

[1]  All ECF citations in this Order are to the docket in the underlying criminal case, Cr. No. 22-00045 JMS.

## II.  BACKGROUND

### A.    Factual Background and Prior Proceedings

This background section sets forth only the facts necessary to understand the general history of this case and place the § 2255 Motion into proper context.  As necessary, the court will address more specific facts as they relate to particular claims raised in the § 2255 Motion.

Defendant and his wife, Erin Mazzei, were charged in a May 26, 2022 Indictment with: (1) conspiracy to commit wire fraud in violation of 18 U.S.C § 1349 (count 1); (2) wire fraud in violation of 18 U.S.C. § 1343 (count 2); (3) conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (count 3); and (4) money laundering in violation of 18 U.S.C. § 1957 (count 4). ECF No. 1.

On August 28, 2024, Defendant entered a plea of guilty, pursuant to a plea agreement, to counts 1 and 3 of the Indictment.  ECF Nos. 77, 78.  In return for entering a plea of guilty, the United States agreed to dismiss counts 2 and 4 after sentencing and not to file additional charges against Defendant relating to: (1) the submission of false statements to several mortgage lenders; and (2) identity theft.  ECF No. 78 at PageID.265–266.  Defendant was sentenced on January 9, 2025, to a total term of incarceration of 36 months, a term of supervised release of three years, and restitution in the amount of $1,418,174.70 (less amounts

2

previously paid).  *See* ECF Nos. 106, 107.  In addition, the court ordered forfeiture of real property located in Kapolei, Hawaii, real property located in Arroyo Grande, California, and over $625,000 in United States currency.  ECF No. 105 (forfeiture order).

Defendant's plea agreement contains a waiver of his right "to challenge his conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255."  ECF No. 78 at PageID.281.  This waiver contains two exceptions: (1) if the court imposed a sentence above the guideline range as determined by the court, then Defendant retained the right to collaterally attack "the portion of his sentence greater than specified in that guideline range"; and (2) a claim based on ineffective assistance of counsel.  *Id*.[2]  Defendant signed the plea agreement under the heading "AGREED."  *Id*. at PageID.294.  And during his August 28, 2024 change of plea hearing, Defendant confirmed that he read the plea agreement, discussed it with counsel, and understood its terms.  ECF No. 114 at PageID.1037–1038.

---

[2]  Defendant's 36-month sentence fell within the guideline range as determined by the court.  With a guideline offense level 20 and criminal history category I, the advisory guideline range was 33 to 41 months.  *See* ECF No. 108 at PageID.978 and ECF No. 115 at PageID.1116–1117.

Defendant has been represented by several counsel throughout this proceeding. First, Criminal Justice Act ("CJA") attorney Richard Gronna represented Defendant both pre- and post-indictment. He was appointed to represent Defendant on July 26, 2021. *See* ECF No. 6 in Misc. No. 21-00299 LEK-KJM. On September 23, 2022, after Gronna's motion to withdraw was granted, CJA counsel Jason Say was appointed to represent Defendant. *See* ECF Nos. 25, 26, 27. Say then filed a motion to withdraw, which was granted on April 21, 2023. *See* ECF Nos. 38, 41. CJA counsel Harlan Kimura was then appointed to represent Defendant. ECF No. 43. On September 19, 2023, Andrew Marcantel, an attorney in private practice from Chandler, Arizona, entered an appearance on behalf of Defendant. ECF No. 49. On March 28, 2024, Marcantel withdrew as counsel and Houston, Texas attorney Dan Cogdell entered an appearance on behalf of Defendant. *See* ECF Nos. 71, 73. Cogdell represented Defendant at both his change of plea and sentencing hearings.

Defendant now makes a litany of arguments, many of which are barred, and others of which are without basis in fact or law.

**B.    Procedural Background**

Defendant filed his § 2255 Motion on January 23, 2026. ECF No. 123. The United States filed its response on March 20, 2026, ECF No. 142.

4

Defendant was afforded the opportunity to file a reply, ECF No. 140, but failed to do so.[3]

### III.  SECTION 2255 LEGAL STANDARDS

The court's review is governed by 28 U.S.C. § 2255(a), which provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A court may deny a § 2255 motion if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."  R. 4(b) Governing § 2255 Proceedings in the U.S. Dist. Cts.  A court need not hold an evidentiary hearing if the allegations are "palpably incredible" or "patently frivolous or false" or if the issues can be conclusively decided based on the evidence in the record.  *Blackledge v. Allison*, 431 U.S. 63, 76 (1977) (internal quotation marks and citation omitted); *see also*

---

[3]  Defendant's wife and co-defendant, Erin Mazzei, also filed a § 2255 Motion on January 23, 2026, raising many of the same arguments that Defendant does.  Because the two motions raise many of the same issues, this Order often parallels the Order on Christopher Mazzei's § 2255 Motion.

*United States v. Mejia-Mesa*, 153 F.3d 925, 929 (9th Cir. 1998) (explaining that a "district court has discretion to deny an evidentiary hearing on a § 2255 claim where the files and records conclusively show that the movant is not entitled to relief"). Conclusory statements in a § 2255 motion are insufficient to require a hearing. *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993). Instead, to require a hearing, a petitioner must allege specific facts that, if true, would entitle the petitioner to relief. *See United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003) (citing *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996)).

Several limitations to raising a collateral attack apply to Defendant's § 2255 Motion. These include restrictions precluding a collateral attack based on: (1) a plea of guilty; (2) a plea agreement waiver (other than a claim of ineffective assistance of counsel); (3) procedural default; and (4) a claim relating to a forfeiture or restitution order. Further, if "a petitioner does not allege lack of jurisdiction or constitutional error, an error of law will not provide a basis for habeas relief unless that error resulted in a complete miscarriage of justice or in a proceeding inconsistent with the rudimentary demands of fair procedure." *Hamilton v. United States*, 67 F.3d 761, 763–64 (9th Cir. 1995) (internal quotation marks omitted); *United States v. Addonzio*, 442 U.S. 178, 185 (1979).

First, as to a plea of guilty, *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

Thus, "when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding [in a collateral attack], the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989).  This general rule does not apply "where on the face of the record the court had no power to enter the conviction or impose the sentence."  *Id*.; *see also United States v. Chavez-Diaz*, 949 F.3d 1202, 1207–08 (9th Cir. 2020) (explaining that the exception "allows for constitutionally-based appeals—despite an unconditional guilty plea—where the appeal, if successful, would mean that the government cannot prosecute the defendant *at all*").  This exception exists where a defendant challenges the government's jurisdiction to prosecute him for the charges to which he pled guilty.  *See United States v. Garcia-Valenzuela*, 232 F.3d 1003, 1006–07 (9th Cir. 2000).  Such challenges include claims of vindictive prosecution, violation of the double jeopardy clause, challenges to the constitutionality of the statutes underlying the indictment, and claims that the indictment fails to state an offense.  *Id*. at 1005–06; *see also Class v. United States*, 583 U.S. 174, 178 (2018).

And there is a limitation on raising these claims—they must "be proved by relying on the face of the indictment and on the record as it existed when the trial judge accepted the guilty plea." *Garcia-Valenzuela*, 232 F.3d at 1006 n.2; *see also Broce*, 488 U.S. at 575–76. In an ineffective assistance of counsel context, although "freestanding constitutional claims are unavailable to habeas petitioners who plead guilty, claims of pre-plea ineffective assistance of counsel are cognizable on federal habeas review when the action, or inaction, of counsel prevents petitioner from making an informed choice whether to plead." *Mahrt v. Beard*, 849 F.3d 1164, 1170 (9th Cir. 2017).

Second, a waiver of appellate and/or § 2255 rights "is enforced if (1) the language of the waiver encompasses [the defendant's] right to appeal [or bring a collateral attack] on the grounds raised, and (2) the waiver is knowingly and voluntarily made." *United States v. Rodriguez*, 49 F.4th 1205, 1212 (9th Cir. 2022) (internal quotation marks omitted).[4] "To discern whether a waiver is knowing and voluntary, we must ask 'what the defendant reasonably understood to be the terms of the agreement when he pleaded guilty.'" *United States v. Medina-Carrasco*, 815 F.3d 457, 461 (9th Cir. 2016) (quoting *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993)). The court assesses the knowing and

---

[4] A waiver of the right to appeal is subject to the same analysis as a waiver of the right to bring a collateral attack. *Rodriguez*, 49 F.4th at 1211–12 & n.3.

voluntary nature of a waiver "by assessing the knowing and voluntary nature of the plea agreement as a whole." *Rodriguez*, 49 F.4th at 1212. "A plea agreement is made knowingly if the defendant understands the terms and, to a certain extent, the consequences of the agreement. A plea agreement is made voluntarily if the defendant is not induced by promises or threats to enter the agreement." *Id*. (footnote, internal citation, and quotation marks omitted). In other words, as to Defendant, the § 2255 waiver is enforceable other than to claims of involuntariness of the waiver itself or a claim of ineffective assistance of counsel. *See, e.g.*, *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993); *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994) (determining that a defendant may waive the right to file a § 2255 motion to challenge the length of his sentence); *Wondra v. United States*, 2024 WL 4665670, at *3 (D. Idaho Nov. 4, 2024) ("A defendant may waive his statutory right to file a § 2255 motion challenging his sentence, and that waiver is enforceable."); *see also United States v. Johnson*, 67 F.3d 200, 203 (9th Cir. 1995) (explaining that a defendant who does not "foresee the specific issue that he now seeks to appeal does not place that issue outside the scope of his waiver"); *United States v. Goodall*, 21 F.4th 555, 562 (9th Cir. 2021) ("When a defendant waives his appellate rights, he knows that he is giving up all appeals, no matter what unforeseen events may happen.").

Third, a § 2255 defendant procedurally defaults claims that could have been raised on direct appeal but were not. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Procedural default can be overcome if a defendant demonstrates either cause and actual prejudice or actual innocence. *Id*. Cause "must be something external to the [movant], something that cannot fairly be attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (emphasis omitted); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Thus, a plea agreement appeal waiver provision does not constitute cause. *Garcia-Santos v. United States*, 273 F.3d 506, 508 (2d Cir. 2001); *Norris v. United States*, 2024 WL 4311671, at *8 (S.D. Ala. Sept. 5, 2024). A defendant who pled guilty is prejudiced if there is a reasonable probability that, but for the error, he would not have pled guilty. *United States v. Werle*, 35 F.4th 1195, 1198 (9th Cir. 2022). Exceptions to the cause and prejudice requirement include (1) claims that could not be presented without further factual development, and (2) ineffective assistance of counsel claims. *United States v. Braswell*, 501 F.3d 1147, 1149 n.1 (9th Cir. 2007).

And last, a § 2255 motion cannot be used as a vehicle to collaterally attack a restitution or forfeiture order:

> 28 U.S.C. § 2255 is available to prisoners claiming the right to be released from custody. Claims for other[] types of relief, such as relief from a restitution order, cannot be brought in a § 2255 motion, whether or not the motion also contains cognizable claims for release from custody.

*United States v. Thiele*, 314 F.3d 399, 400 (9th Cir. 2002); *United States v. Finze*, 428 F. App'x 672, 677 (9th Cir. 2011) (applying *Thiele* to bar a § 2255 challenge to a forfeiture order); *United States v. Kealoha*, 2023 WL 3505328, at *4 (D. Haw. May 17, 2023); *see also* 28 U.S.C. § 2255(a).

Because the court concludes that the § 2255 Motion can be decided conclusively based on the existing record, the court will not hold an evidentiary hearing. Further, the court decides the § 2255 Motion without a hearing pursuant to Criminal Local Rule 12.2(a)(1).

## IV.  ANALYSIS

Defendant raises a myriad of grounds in his § 2255 Motion. The court begins with Defendant's claims of ineffective assistance of counsel and then addresses Defendant's remaining claims.

### A.    Ineffective Assistance of Counsel Claims

#### 1.    *Legal Standard*

The Sixth Amendment guarantees the right to effective assistance of counsel at all critical stages of a criminal proceeding, including sentencing. *See United States v. Gonzalez*, 113 F.3d 1026, 1029 (9th Cir. 1997). To prevail on an ineffective assistance of counsel claim, a petitioner must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

11

proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).  That is, the petitioner must show not only that there was a deficiency, but that the deficiency was prejudicial.  *Id*. at 692; *see also Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("An ineffective assistance claim has two components:  A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense.").  "[I]t is unnecessary to consider the prejudice prong of *Strickland* if the petitioner cannot even establish incompetence under the first prong."  *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998) (citing *Hendricks v. Calderon*, 70 F.3d 1032, 1039 (9th Cir. 1995)).

Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  *Id*. at 690–91.  Conclusory allegations of ineffective assistance of counsel made with no factual or legal explanation fall well short of stating a cognizable claim for ineffective assistance of counsel.  *See Blackledge*, 431 U.S. at 74 (1977) ("[P]resentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . . .").  Further,

12

"[s]tatements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea." *United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008); *Blackledge*, 431 U.S. at 73–74 ("[T]he representations of the defendant [at a plea hearing] . . . constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity."); *see also United States v. Morrison*, 113 F.3d 1020, 1021 (9th Cir. 1997) ("Any attempt to contradict the factual basis of a valid plea must fail."); *United States v. Yamashiro*, 788 F.3d 1231, 1237 (9th Cir. 2015) (finding that the district court did not err in denying a motion to withdraw a guilty plea where the defendant's under-oath statements during a change-of-plea hearing contradicted his contention that the plea was not voluntary and knowing).  Absent a showing of extraordinary circumstances, a defendant cannot overcome the presumption of veracity that attaches to under-oath statements.  *Muth v. Fondren*, 676 F.3d 815, 821–822 (9th Cir. 2012) (citing cases); *see also, e.g.*, *Favela-Astorga v. United States*, 2024 WL 4416977, at *5 (D. Ariz. Oct. 4, 2024); *Chipman v. United States*, 2023 WL 2184633, at *3 (W.D. Wash. Feb. 23, 2023).

> **2.    *Allegations of Ineffective Assistance of Counsel Against Gronna***

As set forth above, Gronna represented Defendant both pre-indictment (from July 26, 2021 until May 26, 2022) and post-indictment (from May 26, 2022

until September 23, 2022).  Defendant claims that Gronna "did no motions, no interviews, no files, no review, not even returning a phone call."  ECF No. 123 at PageID.1228.  He further claims that after he asked Gronna to challenge the seizure of assets, Gronna requested to be removed from the case.[5]  *Id*.  This claim fails for several reasons.

At least in part, Defendant's argument fails as a legal matter—an attorney cannot provide ineffective assistance of counsel pre-indictment.  *See United States v. Olson*, 988 F.3d 1158 (9th Cir. 2021) (stating that the Sixth Amendment right to effective assistance of counsel does not attach prior to the time that a defendant is formally charged).  And Defendant points to no specific actions that Gronna took or failed to take during the post-indictment period.  Instead, he simply lumps the two time periods together.

Further, Defendant fails to argue, let alone prove, any prejudice from Gronna's alleged shortcomings.  *See Rodriguez*, 49 F.4th at 1213 (explaining that to prove prejudice a defendant must demonstrate that absent deficient performance by counsel, he would "either have gone to trial or received a better plea bargain") (citations omitted).  And finally, Defendant has not shown that Gronna's

---

[5]  The record actually shows something different—Gronna requested to be removed as counsel after Defendant filed an ethics complaint against Gronna with the Hawaii Supreme Court's Disciplinary Board, not based on a disagreement over the filing of a motion.  *See* ECF No. 21.

representation prevented him "from making an informed choice whether to plead." *Mahrt*, 849 F.3d at 1170.  In short, Defendant's conclusory statements are insufficient to meet his burden.[6]  *Blackledge*, 431 U.S. at 74 ("[P]resentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . . .").

>   **3.      *Allegations of Ineffective Assistance of Counsel Against Cogdell***

Liberally construed, Defendant claims that Cogdell provided ineffective assistant of counsel because he: (i) provided substandard representation due to an illness of his wife; (ii) failed to respond to various requests by Defendant "on the subject of filing a [United States Sentencing Guideline section] 5K1.1"

---

[6] Defendant also claims that Gronna violated his right to a speedy trial without consulting him.  In fact, there was no Speedy Trial Act violation under 18 U.S.C. § 3161 et seq. during the period that Gronna represented Defendant.  *See* ECF Nos. 6 (setting the initial trial date on August 9, 2022) and 12 (stipulation and order continuing the trial date, and waiving time under the Speedy Trial Act, from August 9, 2022 until June 6, 2023).  In short, Defendant fails to show that his speedy trial rights were violated in any way.  Further, a knowing and voluntary guilty plea forecloses a collateral attack as to events antecedent to the guilty plea, unless the court lacked the power to enter a conviction and impose sentence.  *See Broce*, 488 U.S. at 569.  And this bar applies to challenges based on a violation of the Speedy Trial Act.  *See United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) ("By pleading guilty, Bohn waived his right to assert a violation of the Speedy Trial Act.").  Finally, to the extent Defendant argues that Gronna was ineffective by agreeing to continue the trial date and waive time under the Speedy Trial Act without consulting him, that decision constitutes a scheduling matter, part of "an attorney's prerogative" which "may be decided without client approval."  *United States v. Moore*, 2021 WL 5702157, at *4 (D. Idaho Dec. 1, 2021); *see also United States v. Gates*, 709 F.3d 58, 66 (1st Cir. 2013) ("We hold, therefore, that in the ordinary course and within the confines of the [Speedy Trial Act] exclusion provisions, defense counsel has the power to seek [a Speedy Trial Act] continuance without first informing his client or obtaining his client's personal consent.").

motion;[7] (iii) failed to argue actual loss versus intended loss under the sentencing guidelines; (iv) failed to present "crucial evidence," including "evidence that banks were not fully knowledgeable of the guidelines of the PPP program, banks that were now being incentivized to turn in those that had received PPP loans, and legitimate business evidence of the Ohana Project"; (v) failed to argue improper venue; (vi) failed to argue a *Brady v. Maryland*, 373 U.S. 83 (1963), violation[8]; (vii) failed to point out misstatements made by the prosecutor during sentencing; (viii) failed to question the court's comments regarding restitution and forfeiture at sentencing; (ix) failed to withdraw as Defendant's counsel after the change of plea hearing; (x) failed to object to a plea agreement that prohibited "ALL downward departures;" (xi) failed to object when a DOJ investigator posed as a court official and called to verify a character letter provided to the court; and (xii) failed to object when the AUSA threatened to prosecute Defendant's mother.  *See* ECF No. 123 at PageID.1216–1217, 1228–1229.

---

[7] Under Guideline § 5K1.1, "upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, a sentence that is below the otherwise applicable guideline range may be appropriate."

[8] Under *Brady*, "the prosecution has an obligation, imposed by the Due Process Clause, to produce evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment.  Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Cano*, 934 F.3d 1002, 1022 (9th Cir. 2019) (internal citations and quotation marks omitted).

The court addresses each claim in turn.

i.      Substandard representation due to illness of wife

Defendant contends that because Cogdell's wife was ill, Cogdell provided ineffective assistance of counsel.[9]  In support of this argument, Defendant attaches emails in which he expresses displeasure with Cogdell's services.  *See, e.g.*, ECF No. 123 at PageID.1236–1238.  But even assuming that Cogdell's wife was ill and that he was preoccupied as a result, Defendant fails to show (1) that Cogdell's conduct fell below an objective standard of reasonableness due to his wife's illness, or (2) that even if it did, Defendant was prejudiced in any way.  Defendant's conclusory allegations do not satisfy his burden.  *Blackledge*, 431 U.S. at 74 ("[P]resentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . . .").

ii.     Failing to communicate with the government regarding a
        possible § 5K1.1 motion

Defendant claims that Cogdell "did not respond to numerous requests from Petitioner for a [section] 5K1.1" motion.  ECF No. 123 at PageID1216.  To the extent that Defendant alleges that Cogdell failed to discuss the possibility of cooperation with the government, he is mistaken.  Cogdell spoke to the assigned

---

[9]  Defendant also claims the Sixth Amendment was violated because a "personal injury attorney" handled his criminal case.  But Cogdell was privately retained by Defendant, not appointed by the court.  And to the extent he is referring to Gronna, Say, or Kimura, they are experienced criminal defense attorneys that participated in the court's CJA panel for years.  This claim is both conclusory and not based in fact.

Assistant United States Attorney ("AUSA") about the possibility of cooperation and a § 5K1.1 motion on April 17, 2024, June 12, 2024, July 10, 2024, and November 25, 2024.  ECF No. 142-2 at PageID.1523–1524.  Then, on January 8, 2025, Cogdell sent the AUSA an email, which stated in part, "[a]s I have mentioned to you before, [Defendant] has always been interested in assisting the Government in prosecuting other folks . . . ."  ECF No. 123 at PageID.1239.  The AUSA's response also refers to a previously raised offer to cooperate.  ECF No. 142-2 at PageID.1524 ("I passed this information along to the agents when you first made the offer.").  Cogdell was not deficient in failing to raise the possibility of a § 5K1.1 motion with the government.  And even if he was, Defendant has failed to show that he was prejudiced as a result.[10]

> iii.   Failing to argue "actual loss" versus "intended loss" under the guidelines

Defendant claims that Cogdell stated that he "would argue actual loss vs. intended loss" under the sentencing guidelines, and that *United States v. Banks*, 55 F.4th 246 (3d Cir. 2022), supports this position.  ECF No. 123 at PageID.1228.  Although not clear, Defendant appears to claim that the court applied an intended

---

[10]  To the extent Defendant claims that Cogdell should have sought a § 5K1.1 motion from the government based on his early "repayment of 84% of the 'loss' before sentencing," ECF No. 123 at PageID.1228, the repayment of funds is not a valid basis for the government to bring a § 5K1.1 motion.  Instead, such a motion is limited to "substantial assistance in the investigation or prosecution of another person who has committed an offense."  Guideline § 5K1.1.

loss amount, but Cogdell should have argued for an application of actual loss. And, according to Defendant, his guideline offense level would have been much lower had the court applied an actual loss amount.  ECF No. 123 at PageID.1228. Defendant is mistaken on several fronts.

First, some background—Defendant's fraudulent conduct involved Paycheck Protection Program ("PPP") loans under the Coronavirus Aid, Relief, and Economic Security Act.  Defendant stipulated in his plea agreement to certain facts, including that he and his wife conspired to obtain PPP funds by submitting false and fraudulent loan applications and supporting documentation, while concealing the fact that they submitted multiple PPP loan applications.  Further, as a "result of the scheme, [Defendant] and Erin Mazzei obtained approximately $1,365,000.00 in PPP funds to which they were not entitled, which they used to pay for personal expenses and an unallowable new business venture."  ECF No. 78 at PageID.270.  Specifically, Defendant and his wife's PPP fraud resulted in the payment to them of: $92,500 from "Bank 1"; $562,500 from "Bank 2"; and $710,332 from "Bank 3."  *Id*. at PageID. 271–275.

In determining the loss, the presentence investigation report determined that Defendant fraudulently obtained a total of $1,365,332 in PPP loans.  ECF No. 99 at PageID.793, 798.  Under guideline § 2B1.1, the report applied a base offense level 7 and a 14-level increase based on the loss of

19

$1,365,332.[11]  *Id*. at PageID.798.  At sentencing, Cogdell did object to the total loss amount,[12] and the court determined that $1,365,332 was the loss amount that applied to Defendant.  ECF No. 115 at PageID.1117.

And so, Defendant's argument is premised on a mistaken view—that the court calculated intended loss, not actual loss, in determining total loss.  In fact, the loss was premised on the amount of fraudulently obtained funds from three separate banks.  That represents actual, not intended, loss.  And the § 2255 Motion does not claim that Cogdell could have presented evidence to offset the loss amount, such as money returned *before* his offense was detected.  *See* Guideline § 2B1.1, application note 3(D) (stating that loss shall be reduced by money returned "to the victim before the offense was detected").[13]  In short, Cogdell was not deficient in failing to argue actual loss at sentencing.

####      iv.    Failing to present "crucial" evidence

Defendant claims that Cogdell failed to present "crucial" evidence, including that "banks were not fully knowledgeable of the guidelines of the PPP

---

[11]  The 14-level increase was based on a loss of between $500,000 and $1,500,000 under § 2B1.1(b)(1)(H).

[12]  Cogdell did argue that Defendant should not be held responsible for the entire loss amount under § 2B1.1(b)(17)(A).  The court overruled this objection at sentencing.  ECF No. 115 at PageID.1101–1117.

[13]  *United States v. Banks*, 55 F.4th 246 (3d Cir. 2022), which held that the pre-2024 Guidelines requires a calculation based only on actual loss, is simply irrelevant.  Even if *Banks* applied in the Ninth Circuit, *see United States v. Hackett*, 123 F.4th 1005 (9th Cir. 2024), the court used the calculation—actual loss—approved by *Banks*.

20

program" and banks "were now being incentivized to turn in those that had received PPP loans." ECF No. 123 at PageID.1229. This argument fails—whether the banks were "not fully knowledgeable" about the PPP program, or whether they have been "incentivized" to report PPP fraud, is simply irrelevant to the issues before the court. As a result, Cogdell was not deficient in failing to raise these matters; and even if he were, there could be no prejudice.

v.    Failing to argue improper venue

Defendant claims that Cogdell (and perhaps Gronna) was ineffective for failing to challenge venue in the District of Hawaii. *Id*. at PageID.1231. Because venue was proper in the District of Hawaii as to both counts 1 and 3 of the Indictment, this claim necessarily fails.

A criminal defendant "has a constitutional right to be tried in a district where the crime was committed." *United States v. Lukashov*, 694 F.3d 1107, 1119 (9th Cir. 2012). And Federal Rule of Criminal Procedure 18 provides that "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Venue must be proper as to each count in an indictment. *United States v. Pace*, 314 F.3d 344, 349 (9th Cir. 2002).

To decide whether venue is proper the court "must initially identify the conduct constituting the offense (the nature of the crime) and then discern the

21

location of the commission of the criminal acts." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999). To determine the "nature of the crime," the court looks to the "essential conduct element[s]" of the offense. *Id*. at 280.

Unless otherwise provided by law, "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). And it is "well settled that venue on a conspiracy charge is proper where . . . any overt act committed in furtherance of the conspiracy occurred." *United States v. Gonzalez*, 683 F.3d 1221, 1224 (9th Cir. 2012); *see also United States v. Hui Hsiung*, 778 F.3d 738, 746 (9th Cir. 2015).

Count 1 charged Defendant with conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343, 1349.[14] ECF No. 1 at PageID.6–16. Specifically, that count charges that by email Defendant submitted a fraudulent application and records to the Bank of Hawaii,[15] which is a bank based and headquartered in Hawaii, in support of a loan application seeking over $710,000 in PPP funds. *Id*. at PageID.13. Given these facts, there was no factual or legal basis for counsel to

---

[14] There is no specific venue statute covering wire fraud or conspiracy to commit wire fraud.

[15] The Indictment refers to "Bank 3" as "based" and "headquartered" in the State of Hawaii," and the presentence report specifically identified "Bank 3" as the Bank of Hawaii. *See* ECF No. 1 at PageID.5, 13 and ECF No. 99 at PageID.792–793.

22

have challenged venue as to count 1 in the District of Hawaii. *See Pace*, 314 F.3d at 349) (stating that venue is established in a wire fraud case "in those locations where the wire transmission at issue originated, passed through, or was received").

Count 3 charged Defendant with conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(h) and 1957. For this violation, a specific venue provision applies:

> (i) Venue.
>
> (1) Except as provided in paragraph (2), a prosecution for an offense under this section or section 1957 may be brought in—
>
> (A) any district in which the financial or monetary transaction is conducted; or
>
> (B) any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted.
>
> (2) A prosecution for an attempt or conspiracy offense under this section or section 1957 may be brought in the district where venue would lie for the completed offense under paragraph (1), or in any other district where an act in furtherance of the attempt or conspiracy took place.
>
> (3) For purposes of this section, a transfer of funds from 1 place to another, by wire or any other means, shall constitute a single, continuing transaction. Any person who conducts (as that term is defined in subsection

23

(c)(2)) any portion of the transaction may be charged in
any district in which the transaction takes place.

18 U.S.C. § 1956(i)(1)–(3).

Here, among the financial transactions listed in count 3 was a

$175,000 "[w]ire transfer by ERIN MAZZEI from Bank 5 acct. no. x0096 to

T.G.E.S., an entity based in the District of Hawaii, for down payment on a Koio

Drive condo." ECF No. 1 at PageID.19.[16]  Venue is thus proper in the District of

Hawaii as a "district in which the financial or monetary transaction is

conducted."[17]  Again, because there was no factual or legal basis for counsel to

challenge venue in the District of Hawaii, counsel was not deficient.

vi.     Failure to argue a *Brady* violation

Defendant claims that Cogdell failed to argue that the government

violated its *Brady* obligation.[18]  Specifically, Defendant claims that the government

suppressed emails "from loan originators that explicitly stated that payroll

---

[16]  "T.G.E.S." is Title Guaranty Escrow Services. *See* ECF No. 99 at PageID.794.  It makes sense that funds were transferred to a Hawaii title and escrow company because, as alleged in the Indictment, the "Koio Drive condo" is located in Kapolei, Hawaii. *See* ECF No. 1 at PageID.21 (forfeiture allegation).

[17]  "[T]he term 'conducts' includes initiating, concluding, or participating in initiating, or concluding a transaction . . . ." 18 U.S.C. § 1956(c)(2).

[18]  Defendant also claims that the prosecution engaged in other forms of prosecutorial misconduct beyond a *Brady* violation.  Those allegations are discussed separately in this Order.

24

projections were acceptable for PPP loan applications."  ECF No. 123 at

PageID.1229.

A defendant may challenge a pre-plea *Brady* claim only to challenge

the voluntariness of a guilty plea.  *United States v. Sanchez*, 50 F.3d 1448, 1453

(9th Cir. 1995).[19]  To prevail, Defendant must demonstrate that "there is a

reasonable probability that but for the failure to disclose the *Brady* material, the

defendant would have refused to plead and would have gone to trial."  *Id*. at 1454.

The test to determine whether a defendant would have gone to trial is an objective

one that centers on the likely persuasiveness of the withheld information.  *Id*.

(quotation marks and citation omitted).

First, Defendant's argument falls under its own weight.  If Cogdell

was aware of the loan originator emails, then there was no *Brady* violation.  *See*

*Raley v. Ylst*, 470 F.3d 792, 804 (9th Cir. 2006) (finding no *Brady* violation if the

defendant is aware of the essential facts that enable him to take advantage of the

---

[19]  In *United States v. Ruiz*, 536 U.S. 622, 633 (2002), the Supreme Court concluded that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant."  *Ruiz* creates some tension with *Sanchez*.  *See, e.g.*, *Parker v. County of Riverside*, 78 F.4th 1109, 1117–18 (9th Cir. 2023) (reiterating that "as I have previously noted, [the Ninth Circuit's] holding that *Brady* applies during plea bargaining conflicts with the Supreme Court's decision in [*Ruiz*]," and stating that "we should revisit this issue with the benefit of *Ruiz*. . . in an appropriate case") (R. Nelson, J. concurring) (citing *United States v. Harshman*, 2021 WL 3929926, at *2–4 (9th Cir. Sep. 2, 2021) (R. Nelson, J., concurring)).  Regardless, this Order applies *Sanchez* as binding precedent in the Ninth Circuit, under which Defendant's claim still fails (and so this is not an "appropriate case" to revisit the tension between *Sanchez* and *Ruiz*).

exculpatory evidence).[20]  And if Cogdell was unaware of the emails, then he could not have been ineffective in failing to argue a *Brady* violation.  Second, in any event, the alleged emails do not constitute *Brady* material.  Defendant's conviction was not based on inaccurate payroll projections—instead, Defendant admitted under oath at his change of plea hearing to multiple fraudulent statements unrelated to payroll projections that he made in relation to the PPP loans.  *See* ECF No. 114 at PageID.1059–1075.  Stated differently, the content of the alleged emails stating that "payroll projections were acceptable for PPP loan applications," was not material to Defendant's guilt or punishment.  *Brady*, 373 U.S. at 87.  And third, even if the emails were *Brady* material, and even if Cogdell should have argued they were being withheld, Defendant has not shown a reasonable probability that but for the failure to disclose the *Brady* material, he would have refused to enter a guilty plea and would have gone to trial instead.

\\\

\\\

\\\

\\\

---

[20]  Defendant appears to have been aware of this "*Brady*" information as early as March 30, 2020.  *See* ECF No. 123 at PageID.1275–1278 (setting forth an email chain from March 29 and 30, 2020, between Christopher Mazzei and South End Capital containing an alleged exculpatory email) and PageID.1241 (email from Christopher Mazzei to his attorney stating th at several loan originators informed him that he could use payroll projections to apply for a PPP loan).

26

> vii.   Failing to point out misstatements made by the prosecutor during sentencing

Defendant further claims that Cogdell did not argue or correct various alleged misstatements made by the AUSA during sentencing.  ECF No. 123 at PageID.1216.  Specifically, he alleges that the AUSA falsely stated that:

> the Kapolei condo was purchased solely for a VRBO vacation home; the claim that the PPP funds were used to pay off the Arroyo Grande, California home mortgage; the claim that [Defendant] purchased a billboard to get the attention of Dawyne "The Rock" Johnson; and the mischaracterization of the Ohana Project as a "vanity television project."[21]

*Id*. at PageID.1229.  These arguments fail.

During the change of plea hearing, the government provided the following proffer as to how Defendant and his wife spent the fraudulently obtained PPP funds:

> And upon receiving the aforementioned PPP loan funds, Christopher Mazzei and Erin Mazzei moved the funds into their bank accounts and began spending the funds on unallowable personal and other expenses.  Among the notable personal expenses made by Christopher Mazzei and Erin Mazzei were a $39,445 payment for the mortgage on their home in Arroyo Grande, California; $175,500 for the purchase of a home in Kapolei, Hawaii; and $125,877 for the purchase of two vehicles.
>
> Christopher Mazzei and Erin Mazzei also committed

---

[21]  Elsewhere in the § 2255 Motion, Defendant claims that Cogdell failed to present "legitimate business evidence" of the Ohana Project.  ECF No. 123 at PageID.1216.

27

> $793,000 of PPP funds to a third party production
> company to develop various film and television projects.
> Of this amount, they spent approximately $164,796 to
> film a promotional trailer for a television project entitled
> Ohana that they planned to produce in the State of
> Hawaii.

ECF No. 114 at PageID.1066.  When asked by the court if the AUSA's proffer was accurate, Defendant stated, "Yes, Your Honor." *Id*. at PageID.1067.  The court later asked: "And then [the AUSA] went through some of the spending of the funds on unallowable expenses.  Do you agree to what he said on that as well?" Defendant answered, "Yes." *Id*. at PageID. 1074.  Defendant thus admitted under oath that he and his wife used $39,445 of PPP proceeds towards the mortgage on their home in Arroyo Grande, California.  This statement "carr[ies] a strong presumption of veracity in subsequent proceedings attacking the plea." *Ross*, 511 F.3d at 1236.[22]

Further, Defendant admitted that he used $175,500 of PPP funds for the purchase of a home (condo) in Kapolei, Hawaii.  Against this backdrop, at sentencing the AUSA stated that Defendant and his wife put the Kapolei condo "on a vacation rental service called VRBO, and they pulled in $41,000 from renting that condominium in Kapolei, Hawaii."  ECF No. 115 at PageID.1122.  Contrary

---

[22]  To the extent Defendant claims that the AUSA incorrectly stated that PPP funds were used to "pay off" the mortgage as opposed to simply paying down the mortgage balance, any such misstatement would be immaterial.  And Cogdell was certainly not deficient in failing to raise such an inconsequential discrepancy.

28

to Defendant's claim, the AUSA never stated that the condo was used "solely" as a vacation rental. ECF No. 123 at PageID.1229. Instead, he set forth facts which Defendant does not challenge—that the condo generated $41,000 through VRBO rentals.[23] And at sentencing, Cogdell corrected any misimpression that could have been left by the AUSA—he told the court that "the VRBO rental didn't begin until after the fraud was discovered." ECF No. 115 at PageID.1139. The court accepted that proffer as accurate. *Id*. In short, Cogdell corrected any possible false impression left by the AUSA during sentencing.

As set forth above, Defendant also admitted that he and his wife spent $793,000 on a third-party production company. In his remarks to the court during sentencing, the AUSA stated that Defendant and his wife "set aside $793,000 for a Vanity television project called Ohana, spending $164,000 to film a promotional trailer." *Id*. at PageID.1122. Defendant appears to claim that Cogdell should have corrected the statement that these funds were spent on a "vanity" television project. But given that Defendant admitted that he used fraudulently obtained PPP funds to support the Ohana project, it was quite reasonable for Cogdell to avoid a

---

[23] The AUSA made this comment in response to Erin Mazzei's statement that the condo was purchased as a "home writing and production office as we started making connections in the Hawaii film industry." ECF No. 115 at PageID.1122. In short, the AUSA was pointing out that the condo was used—at least in part—as a vacation rental at some point in time.

discussion of the project, and in particular not to nitpick as to whether it was a "vanity" project.[24]

       During sentencing, the AUSA also stated that Defendant's "support letters include one letter from a production partner that explains that the Mazzeis hoped to attract the attention and support of a film actor with ties to Hawaii, Dwayne the Rock Johnson, and that was how they spent the PPP loan money." *Id.* The AUSA then pointed out that the purpose of the PPP was not to provide funds for new business ventures. *Id.* at PageID.1123. The reference letter, written by an individual that worked with Defendant on the Ohana project, states that Defendant and his wife "sold personal items to finance a billboard near Dwayne Johnson's Los Angeles residence, hoping to gain his support." ECF No. 103-1 at PageID.865; *see also* ECF No. 104-4 at PageID.918 (showing a photograph of the billboard, which states in part, "Let's Keep The Legacy of Filmmaking in Hawai'i Strong. OhanaTheSeries.com"). And in his § 2255 Motion, Defendant claims the billboard was financed by a family friend. ECF No. 123 at PageID.1252. But regardless of the actual source of funds, Defendant claims that Cogdell should have made clear that PPP funds were not used to purchase the billboard advertisement.

---

[24] To be clear, the court believed at sentencing, and believes now, that Defendant and his wife put funds into the Ohana project hoping that it would succeed and provide them with income. The court was never of the view that the Ohana project itself was illegitimate or illegal. But there is no dispute that funds used on the Ohana project were fraudulently obtained. And whether it was a "vanity" project has always been irrelevant to the court.

A defense counsel need not address every issue raised by a Defendant during sentencing.  Strategic choices must be made, and those are "virtually unchallengeable." *Strickland*, 466 U.S. at 690.  Here, Defendant admitted under oath that he used a large part of the fraudulently obtained PPP funds to support the Ohana project.  It would make little sense for Cogdell to provide an accounting as to how much of the Ohana project was funded by illegal proceeds versus legal ones.  What was material to the court was that Defendant obtained PPP funds through fraud, and then spent those proceeds, in part, on a television project—what specific funds went to a particular part of that project is simply not relevant. Instead, it was well within the professional range of reasonableness for Cogdell to focus at sentencing—as he did—on more significant mitigating factors, such as Defendant's minor children and his other legitimate business.  *See* ECF No. 115 at PageID.1129–1130.  Given these facts, there was no reason for Cogdell to highlight Defendant's involvement in the Ohana project.  And, in any event, there was certainly no prejudice in failing to do so.  That is, even assuming that Cogdell should have raised these various arguments at sentencing, Defendant has failed to demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, he would have received a lesser sentence.

31

> viii.  Failing to question the court's comments regarding
> restitution and forfeiture at sentencing

Defendant argues that Cogdell was ineffective at the sentencing hearing when he "did not question" the court's comments about how "forfeiture would be applied towards restitution." ECF No. 123 at PageID.1216. Specifically, Defendant argues that the court left him with the impression that he would not have to pay both restitution and forfeiture, and that Cogdell was ineffective in not correcting this impression. *Id*. at PageID.1230. But even assuming the court left this impression with Defendant, the plea agreement outlines that Defendant would be required to pay full restitution *and* forfeiture. *See* ECF No. 78 at PageID.267–268, 284–289. The court highlighted this fact during the change of plea hearing, informing Defendant: "So, in addition to forfeiture, there would be a restitution order." ECF No. 114 at PageID.1035. Further, there is no double recovery if both restitution and forfeiture are ordered. "The two payments represent different types of funds: punitive and compensatory. They are different in nature, kind, and purpose." *United States v. Davis*, 706 F.3d 1081, 1084 (9th Cir. 2013). Given the requirement in the plea agreement for Defendant to pay both forfeiture and restitution, there was no reason for Cogdell to correct any misimpression that the court may have left with Defendant himself at the time of sentencing. Further, even if Cogdell should have explained the restitution and forfeiture obligation to

Defendant more clearly during sentencing, the failure to do so could not have prejudiced Defendant.[25]

ix.  Failing to withdraw as Defendant's counsel

Defendant claims that Cogdell "would not remove himself after concerns were raised of his ability to defend after Change of Plea hearing."  ECF No. 123 at PageID.1216.[26]  Later, Defendant states that "Cogdell had a duty to provide adequate representation or withdraw and he did neither."  *Id*. at PageID.1228.  Defendant provides no support for this claim, and Cogdell states that no such "demand" was made.  ECF No. 142–2 at PageID.1527.  Regardless, even if Defendant raised concerns to Cogdell, he does not allege that he *requested* Cogdell to file a motion to withdraw.  Instead of being a stand-alone claim of ineffective assistance of counsel, this allegation appears to argue that Cogdell was ineffective in representing Defendant, and thus he was ineffective in failing to file a motion to withdraw.  This reasoning assumes—incorrectly—that Cogdell was

---

[25]  Defendant also claims that the Department of Justice "violated their forfeiture policy, stating a 90-day window for charges to be filed after assets are seized, or the property is to be returned.  [Defendant] claims that it took an entire year for the charges to be filed."  ECF No. 123 at PageID.1230.  Although unclear, Defendant may be referencing a 90-day period for the government to file a complaint if an individual makes a claim to seized property under 18 U.S.C. § 983(a)(3)(A).  Here, Defendant does not provide evidence (or even allege) that he filed a claim, and thus the 90-day period is inapplicable.  *See Snitko v. United States*, 90 F.4th 1250, 1258 n.5 (9th Cir. 2024) (explaining application of § 983(a)(3)(A)).

[26]  At the change of plea hearing, Defendant stated that he was satisfied with Cogdell's representation of him.  ECF No. 114 at PageID.1025.

ineffective in representing Defendant during the course of his change of plea. Further, Defendant has shown no prejudice based on Cogdell's continued representation of him through sentencing.

> x.   Failing to object to a plea agreement that prohibited any downward departure

Defendant states that the AUSA "tendered a plea deal that prohibited ALL downward departures," and that Cogdell failed to object to this "misconduct." ECF No. 123 at PageID.1217; *see also id.* at PageID.1229 (claiming "prosecutorial misconduct based on a plea agreement provision prohibiting "**any** downward departure"). Defendant is mistaken as to the nature of the plea agreement.

Under the plea agreement, "the parties agree that [Defendant] will not seek a variance or departure from the advisory guideline range as determined by the Court at the time of sentencing and therefore will argue for a sentence within the calculated advisory guideline range . . . ." ECF No. 78 at PageID.278. The plea agreement also made clear that this provision "is not binding on the Court." *Id*. at PageID.279. In other words, Defendant's claim that the plea agreement prohibited *any* downward variance or departure is simply incorrect. The court had discretion to sentence below the guideline range, within the guideline range, or above the guideline range.

Further, Defendant provides no argument or evidence as to why the inclusion of this provision in the plea agreement constituted "prosecutorial

34

misconduct."  Defendant was aware of this provision, discussed it with Cogdell, and agreed to it.  ECF No. 114 at PageID.1038; ECF No. 142-2 at PageID.1526. Because there was no prosecutorial misconduct, Cogdell could not have been deficient in failing to raise the issue with the court.

> xi.     Failing to object when a DOJ investigator posed as a court official

Defendant claims that "a DOJ agent called character witness PJ Haarmsa the day before sentencing posing as a court official to 'verify' his character letter, but in reality, it was a DOJ investigator, which undermines the integrity of the investigation."  ECF No. 123 at PageID.1229.  In support of this claim Defendant attaches a text communication in which Haarmsa states that "the court just called me asking if my letter was legit."  *Id*. at PageID.1280.  When Haarmsa was asked for the phone number of the person who called, he provided a number starting with a 310 area code, and then wrote "Lynn the agent."  *Id*.  Given this communication, it appears that Haarmsa may have confused the difference between a court official and law enforcement.  Regardless, Haarmsa identified the caller as an "agent," a person clearly not attempting to falsely claim affiliation with the court.

Further, even if these events happened, Defendant has failed to show that he was prejudiced by this in any way.  Had Cogdell made the court aware of this issue, it would not have been relevant to the court's consideration of the

35

relevant 18 U.S.C. § 3553(a) factors or the ultimate sentence.  Any such failure by

Cogdell did not constitute ineffective assistance of counsel.

> xii.    Failure to object when the AUSA threatened to prosecute
> Defendant's mother

Defendant next claims the AUSA "used a tactic of threatening charges

against [his] mother if [he] didn't sign the plea deal." *Id*. at PageID.1229.  He

provides no evidence that Cogdell relayed such a threat to him, or even that

Cogdell was aware of such a threat.  More importantly, Defendant confirmed under

oath that nobody threatened him or anyone else or forced him in any way to enter a

plea of guilty.  ECF No. 114 at PageID.1026.  Instead, he stated that he was

pleading guilty of his own free will because he was guilty.  *Id*.  Defendant also

confirmed under oath that, other than the written plea agreement, there was no

other agreement between Defendant and the United States (such as a non-

prosecution agreement as to Defendant's mother).  *Id*. at PageID.1039.  In other

words, although Defendant now claims that threats were made, he stated otherwise

while under oath.  *See Blackledge*, 431 U.S. at 73–74 ("[T]he representations of the

defendant [at a plea hearing] . . . constitute a formidable barrier in any subsequent

collateral proceedings.  Solemn declarations in open court carry a strong

presumption of verity.").  And Defendant has not presented a compelling

explanation for the contradiction or demonstrated extraordinary circumstances to

permit this claim to go forward.  *See Muth*, 676 F.3d at 821–22 ("[A] motion that

36

can succeed only if the defendant committed perjury at the plea proceedings may

be rejected out of hand unless the defendant has a compelling explanation for the

contradiction.") (quoting *United States v. Peterson*, 414 F3d 825, 827 (7th Cir.

2005)).

*    *    *

Defendant has failed to show that Cogdell provided ineffective

assistance of counsel.  The court now addresses the remaining claims in

Defendant's § 2255 Motion.

**B.      The Remainder of Defendant's Claims**

*1.      The Plea Agreement Waiver Is Valid*

Before discussing the specific claims that remain, the court must

determine whether Defendant's plea agreement waiver of his § 2255 rights was

knowing and voluntary.  *Rodriguez*, 49 F.4th at 1212.  It was both.

The language of the plea agreement itself is clear:  Defendant waived

his right "to challenge his conviction or sentence or the manner in which it was

determined in any collateral attack, including, but not limited to, a motion brought

under Title 28, United States Code, Section 2255."  ECF No. 78 at PageID.281.

This broad waiver contained one exception applicable here: a claim based on

ineffective assistance of counsel.  *Id*.  During Defendant's change of plea hearing,

the court explained the waiver in detail, and he confirmed that he understood both

37

the nature and scope of the waiver.  ECF No. 114 at PageID.1042–1044.  Further, after a full colloquy, Defendant understood the terms of the plea agreement and its consequences.  *Id*. at PageID.1037–1038.  And, other than the terms of the plea agreement itself, Defendant was not "induced by promises or threats" to enter the agreement.  *Id*. at PageID.1025.[27]  In short, Defendant's waiver of the right to bring a collateral attack, other than based on a claim of ineffective assistance of counsel, was knowing and voluntary.

## 2.   *Barred Claims Not Premised on Ineffective Assistance of Counsel*

Applying the well-established principles set forth above, the following claims are barred: (1) by the collateral attack waiver in the plea agreement ("plea agreement waiver"); (2) because Defendant entered a plea of guilty ("guilty plea

---

[27]  Specifically, during the August 28, 2024 change of plea hearing, the court asked Defendant whether "anyone made any promise or assurance to you of any kind to get you to enter a plea of guilty, other than what is in the plea agreement itself?"  He answered "No."  The court then asked Defendant, "Has anyone threatened you or anyone else, or forced you in any way to plead guilty?"  Again, Defendant answered "No."  And finally, the court asked if Defendant was "pleading guilty of your own free will because you are guilty?"  Defendant responded:  "Yes."  ECF No. 114 at PageID.1025–1026.  And to the extent Defendant claims that the plea was otherwise "coercive," ECF No. 123 at PageID.1229, these under-oath statements at the change of plea hearing fully undermine this claim.

limitation"); (3) because of procedural default;[28] and/or (4) because the claims are not cognizable under § 2255.  Many of the claims are barred for multiple reasons.[29]

(1)  Prosecutorial misconduct claims relating to events that predate Defendant's plea of guilty: (a) the suppression of emails from loan originators; (b) a threat to prosecute Defendant's mother; and (c) the AUSA "tendered a plea deal that prohibited ALL downward departures," ECF No. 123 at PageID.1217—these claims are barred by the plea agreement waiver, the guilty plea limitation, and/or procedural default.[30]

(2)  Prosecutorial misconduct claims relating to events that postdate Defendant's plea of guilty: (a) a DOJ investigator posing as a court official and calling a character witness to verify the witness's letter; (b) the AUSA used "forfeited funds to bid at foreclosure auction for personal gain (now under FBI investigation for these misconducts);[31] and (c) the AUSA made false statements at

---

[28]  For each claim subject to procedural default, Defendant has failed to show cause and actual prejudice.  Likewise, he has not demonstrated actual innocence.

[29]  Many of these claims are also meritless, for the same reasons set forth in the discussion of ineffective assistance of counsel.  Further, many of these claims are conclusory or simply incorrect.  This section of the Order, however, need not address the merits of many of Defendant's barred claims.

[30]  A valid § 2255 waiver covers pre-plea claims of prosecutorial misconduct.  *See United States v. Lee*, 2017 WL 411205, at *2, *4 (D. Haw. Jan. 30, 2017); *United States v. Demasi*, 2025 WL 2051601, at *3 (6th Cir. July 22, 2025); *United States v. Davis*, 2016 WL 6471012, at *12 (D. Idaho Nov. 1, 2016); *United States v. Porter*, 2022 WL 17852017, at *8–9 (W.D. Penn. Dec. 22, 2022).

(continued . . )

the sentencing hearing," *id.*—these claims are barred by the plea agreement waiver and/or procedural default.

(3)  Claims of error in relation to the imposition of restitution and forfeiture:  Defendant suggests that the court erred in ordering both restitution and forfeiture, *id.* at PageID.1230—a § 2255 motion cannot be used as a vehicle to collaterally attack a restitution or forfeiture order, and, in any event, would be barred by the plea agreement waiver and/or procedural default.

(4)  Claim that Defendant's sentence was too harsh:  Defendant claims that although the court recognized his early restitution payments, the court nonetheless "felt the need to sentence [Defendant] harshly," and the Trump administration has stated that most PPP cases should "be handled civilly, not criminally" *id*. at PageID.1231—this claim is barred by the plea agreement waiver and/or procedural default.

*    *    *

In sum, Defendant has failed to show that he is entitled to any relief, whether viewing his claims individually or in total.  Further, no evidentiary hearing

---

[31]  Defendant has presented no evidence that the AUSA was involved in bidding at a foreclosure auction on Defendant's previous residence.  Instead, he relies on a letter from Jeremy Engle addressed to President Trump containing double hearsay: "the bidder notified me that government agents were present" and bidding at the auction.  ECF No. 123 at PageID.1273. Regardless, Defendant has not alleged that the government was involved in the wrongful foreclosure of his house, so he could show no prejudice.

is necessary as the issues raised can be conclusively decided based on the evidence in the record.

## V.  CERTIFICATE OF APPEALABILITY

In denying the § 2255 Motion, the court must also address whether Defendant should be granted a certificate of appealability ("COA").  *See* R. 11(a) Governing § 2255 Proceedings in the U.S. Dist. Cts. (providing that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant").  A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

"The standard for a certificate of appealability is lenient."  *Hayward v. Marshall*, 603 F.3d 546, 553 (9th Cir. 2010) (en banc), *overruled on other grounds by Swarthout v. Cooke*, 562 U.S. 216 (2011).  The petitioner is required to demonstrate only "that reasonable jurists could debate the district court's resolution or that the issues are adequate to deserve encouragement to proceed further."  *Id*. (internal quotation marks and citation omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (holding that a certificate of appealability should issue only if a prisoner shows, among other things, "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling").  The standard "requires something more than the absence of frivolity, but

41

something less than a merits determination." *Hayward*, 603 F.3d at 553 (citation and internal quotation marks omitted).

The court carefully reviewed Defendant's assertions and gave him every benefit by liberally construing them.  Based on the above analysis and considering all the allegations in the § 2255 Motion, the court finds that reasonable jurists could not find the court's rulings debatable.  Accordingly, a COA is DENIED.

## VI.  <u>CONCLUSION</u>

For the foregoing reasons, the court DENIES Defendant's § 2255 Motion and DENIES a Certificate of Appealability.  The Clerk of Court is directed to close the civil case file, Civ. No. 26-00025 JMS-KJM.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 1, 2026.



   /s/ J. Michael Seabright   
J. Michael Seabright
United States District Judge